UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LIDIA ESTEVEZ PINERO                    :
                                        :
                v.                      :        C.A. No. 06-323T
                                        :
MICHAEL J. ASTRUE[1]                    :
Commissioner of Social Security         :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Income ("SSDI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on July 17, 2006 seeking to reverse the decision of the Commissioner. On January 31, 2007, Plaintiff filed a Motion to Reverse the Commissioner's Final Decision Without a Remand for a Re-hearing or, Alternatively, With a Remand for a Re-hearing. (Document No. 5). On February 28, 2007, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 6). Plaintiff replied on March 13, 2007. (Document No. 7).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that the Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit.

Decision of the Commissioner (Document No. 6) be GRANTED and that the Plaintiff's Motion to Reverse the Commissioner's Final Decision Without a Remand for a Re-hearing or, Alternatively, With a Remand for a Re-hearing (Document No. 5) be DENIED.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for SSDI on October 30, 2002, alleging disability as of January 1, 2004.[2]   (Tr. 59-62, 356).   The application was denied initially (Tr. 27, 29-31) and on reconsideration. (Tr. 28, 33-35). Plaintiff requested an administrative hearing. (Tr. 36). On March 15, 2005, Administrative Law Judge Barry H. Best ("ALJ") held a hearing at which Plaintiff, represented by counsel and assisted by an interpreter, and a vocational expert ("VE"), appeared and testified.  (Tr. 353-384).  The ALJ issued a decision on June 14, 2005 finding that Plaintiff was not disabled. (Tr. 17-26).  The Appeals Council denied Plaintiff's request for review on May 18, 2006. (Tr. 9-11, 15-16).  A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ failed to properly consider and evaluate Psychiatrist A. Hilton Parmentier's Consultative Examination.  Plaintiff also argues that the ALJ failed to properly apply the treating physician rule as to her Treating Psychiatrist Maria Gonzalez.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record to support his decision that Plaintiff failed to meet her burden of establishing disability within the meaning of the Act.

## III.     THE STANDARD OF REVIEW

---

[2]  Plaintiff had originally alleged an onset date of February 1, 2002.  (Tr. 59).  However, at the administrative hearing, Plaintiff amended that onset date to January 1, 2004 "because of [her] earnings in 2003."  (Tr. 356).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (*per curiam*); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276

F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.      Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.      The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or

combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.     Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was forty-eight years old on the date of the ALJ's decision.  (Tr. 59).  Plaintiff completed the fourth grade (Tr. 79, 361), and worked as a self-employed cleaning person, factory machine operator, waitress and self-employed child care worker.  (Tr. 74, 84, 362-364).  Plaintiff alleged disability due to diabetes, a heart condition, a back disorder, tuberculosis, depression and anxiety.  (Tr. 73, 96, 356-357).  At the ALJ hearing, Plaintiff's counsel identified this as a "non-exertional case...with elements of 12.02 [Organic Mental Disorders], 12.04 [Affective Disorders], and 12.06 [Anxiety Related Disorders]."  (Tr. 356).

On March 27, 2003, Dr. Maria Gonzalez conducted an initial psychiatric evaluation of Plaintiff (Tr. 243 -247), who, upon exam, was anxious, cooperative, attentive, and interested, with an appropriate mood; constricted affect; goal directed thoughts; no delusions or suicidal ideations; and good memory, concentration and attention spans, intelligence, judgment, insight, and orientation. (Tr. 245). Dr. Gonzalez diagnosed Plaintiff with a generalized anxiety disorder and a Global Assessment of Functioning (GAF) score of 35-40.[3]  (Tr. 246).

On February 5, 2004, Dr. Michael R. Slavit, a Disability Determination Services (DDS) psychologist, opined that there was insufficient evidence to determine whether Plaintiff suffered from a severe mental impairment. (Tr. 215-217). Dr. Slavit noted that Plaintiff was a "no show" for a consultative exam. (Tr. 215).

On February 22, 2005, Dr. Gonzalez opined that Plaintiff could not engage in substantial gainful activity on a full-time and ongoing basis, and that she had severe restrictions in her ability to perform complex and varied tasks; moderately severe restrictions in her ability to relate to other people, maintain social functioning and interests, pay attention and concentrate, respond appropriately to supervision and coworkers, respond to customary work pressures, perform simple and repetitive tasks, and understand, remember, and carry out instructions; and moderate restrictions in her ability to perform daily activities and maintain personal habits. (Tr. 252-256).

On March 9, 2005, Dr. A. Hilton Parmentier conducted a psychiatric evaluation of Plaintiff upon referral from Plaintiff's counsel in preparation for the March 15, 2005 ALJ hearing. (Tr. 299-317). Dr. Parmentier diagnosed Plaintiff with a cognitive disorder, a panic disorder with

---

[3]  The Global Assessment of Functioning  (GAF) scale judges an individual's level of functioning only at the time of evaluation. See American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 30 (4th ed. 1994) (DSM-IV).  A GAF score of 3l-40 would indicate some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. See DSM-IV at 32.

agoraphobia, a generalized anxiety disorder and a GAF score of 45-50[4].  Dr. Parmentier opined that Plaintiff would be unable to "present for work" on a regular basis; understand, carry out, or remember instructions; interact with supervisors and coworkers without having conflicts; or maintain persistence and pace in a work setting.  (Tr. 303).  Dr. Parmentier further opined that Plaintiff's impairments met Sections 12.02 and 12.04 of Appendix 1, Subpart P of Regulation No. 4 (the Listings) and caused marked restrictions in activities of daily living; moderate difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, and pace; and four or more episodes of decompensation.  (Tr. 307-317).

Dr. Parmentier also opined that Plaintiff had moderate restrictions in her ability to relate to other people, respond appropriately to coworkers, perform simple tasks, perform personal habits, and maintain interests; and moderately severe restrictions in her ability to understand, remember, and carry out instructions; perform daily activities; maintain social functioning; pay attention and concentrate; respond appropriately to supervision; perform complex, varied, and repetitive tasks; and respond to customary work pressures.  (Tr. 305-306).

On March 15, 2005, Dr. Gonzalez opined that Plaintiff could work with the following restrictions:

---

[4] A GAF of 41-50 would indicate serious symptoms or any serious impairment in social, occupational or school functioning.  See DSM-IV at 32.

-13-

> Her ability to respond appropriately to supervisors, co-workers and the public would be restricted to a moderately severe degree due to anxiety. Additionally [Plaintiff] would suffer from a moderately severe limitation in her ability to understand, carry out and remember even simple instructions. Furthermore, at least 2 times per month [Plaintiff] would be forced to miss work due to poor sleep and increased anxiety.

(Tr. 319-320).

On July 22, 2005, Dr. Gonzalez examined Plaintiff who was alert and oriented with a constricted affect and anxious mood. (Tr. 345-346).

On August 29, 2005, Dr. Gonzalez examined Plaintiff who was alert, oriented and cooperative. (Tr. 346). Dr. Gonzalez noted that Plaintiff was non-compliant with her medications and recommended that she take her medication as prescribed. (Tr. 346).

On September 29, 2005, Dr. Gonzalez examined Plaintiff who was alert and oriented with tingling in her legs and hair loss. (Tr. 346-347). Dr. Gonzalez noted that Plaintiff felt better in regards to her depression and anxiety. (Tr. 347).

On April 11, 2006, Dr. Gonzalez opined that Plaintiff could not engage in substantial gainful activity on a full-time and ongoing basis, and that she had severe restrictions in her ability to pay attention and concentrate; respond to customary work pressures, perform complex and varied tasks; and understand, remember, and carry out instructions; moderately severe restrictions in her ability to relate to other people, perform daily activities, respond appropriately to supervision and coworkers, maintain social functioning, and perform simple and repetitive tasks; and a moderate constriction of interests. (Tr. 349-352).

Plaintiff testified that she was not able to work because she suffered from depression, back, leg and hip pain and a lung impairment. (Tr. 365-366, 374-375). She stated that her daily activities

-14-

included cooking, reading, caring for her children, listening to music, cleaning her stove, sweeping, doing laundry, washing dishes, watching television and visiting with her sister.  (Tr. 370-372, 376).

The ALJ asked the VE expert to assume a person with Plaintiff's age, education, and work experience, who could perform light work that involved simple work tasks over an eight-hour workday, assuming breaks every two hours, on average; levels of dusts, gases, and other pulmonary irritants that were similar to levels in public office buildings; clean manufacturing settings where, with or without controls, the environment was held to similar levels in terms of airborne irritants; and no exposure to temperature or extreme humidity.  (Tr. 380-381).

The VE testified that such a person could perform Plaintiff's past relevant work as a housekeeper, which had over 10,000 positions in existence in the aggregate in Rhode Island, Connecticut and Massachusetts, as well as the jobs of laundry folder, bench assembler, cafeteria attendant, hand packager (certain ones), and machine feeder (certain ones), which had tens of thousands of those positions in existence in the aggregate in Rhode Island, Connecticut and Massachusetts.  (Tr. 381-382).

In his decision, the ALJ found that Plaintiff had a heart condition, diabetes, back pain, tuberculosis and depression/anxiety.  (Tr. 22).  However, as to Plaintiff's physical impairments, the ALJ found them to be well controlled and determined that Plaintiff retained the RFC to perform light work.  Plaintiff does not challenge the ALJ's conclusions as to her physical impairments.  Rather, Plaintiff's appeal challenges the ALJ's evaluation of the medical evidence regarding her depression/ anxiety.

In particular, the ALJ's RFC assessment determined that Plaintiff had only a "moderate" limitation in her ability to maintain concentration, persistence and pace.  (Tr. 25, Finding 5).  If the

Plaintiff's RFC indicated a "moderately severe" limitation in that regard, the VE testified that would preclude Plaintiff's "ability to do any type of work in a sustained consistent adequate fashion." (Tr. 383). Thus, the issue in this case is whether the ALJ's finding of a moderate rather than a moderately severe impairment in this regard is supported by substantial evidence. For the reasons discussed below, this Court concludes that the ALJ's RFC assessment is supported by substantial evidence and thus is entitled to deference.

### A.      The ALJ Properly Evaluated the Opinion of Plaintiff's Treating Psychologist

It is undisputed that Plaintiff was initially evaluated by Dr. Gonzalez on March 27, 2003 (Tr. 243-246), and that such referral was made by Plaintiff's counsel and not any healthcare provider. (Tr. 243). This initial evaluation took place approximately one month after Plaintiff engaged counsel. (Tr. 42). Plaintiff argues that the ALJ failed to properly apply the treating physician rule in assessing Dr. Gonzalez's opinions.

A treating physician's medical opinion must be evaluated using the "treating physician rule," 20 C.F.R. § 416.927(d). Generally, more weight is given to treating sources and controlling weight is given if the opinion is medically supported and not inconsistent with other substantial evidence of record. 20 C.F.R. § 416.927(d)(2). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. Id. The factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, medical support for the opinion, consistency of the opinion with the record as a whole, and specialization. Id.

In his decision, the ALJ discusses Dr. Gonzalez's opinions at length and fully explains his conclusion that Plaintiff's depression and anxiety did not have "more than moderate functional

consequences" on her ability to work. (Tr. 122). In conducting this analysis, the ALJ plainly identified Dr. Gonzalez as a treating source and properly applied the treating physician rule to her opinions.

For instance, the ALJ accurately noted that Plaintiff did not allege disabling depression or anxiety in her initial disability application (Tr. 73) and that Plaintiff's referral to Dr. Gonzalez was through her attorney and not any of her medical doctors. (Tr. 21). The ALJ also accurately noted that Plaintiff never had a psychiatric hospitalization, crisis intervention or any form of mental health therapy on a regular basis. Id. The ALJ noted that Plaintiff meets with Dr. Gonzalez "every four to six weeks, primarily for a medication review." (Tr. 21). However, it appears that the ALJ overstated the frequency of such appointments, as the record only reveals a total of nine appointments during the two-year period March 2003 through February 2005. See Exs. 10F and 15F. Thus, in accordance with 20 C.F.R. § 416.927(d)(2)(i), the ALJ properly discounted the weight given to Dr. Gonzalez's opinion due to the relative infrequency of Dr. Gonzalez's treatment and examination of Plaintiff. (Tr. 21-23).

Further, the ALJ determined that Plaintiff's credibility was "not strong" (Tr. 23) and that her complaint that depression and anxiety interfered with her ability to work is not supported by the record. (Tr. 22). Plaintiff has not challenged the ALJ's negative credibility assessment of her in this appeal. However, since Dr. Gonzalez's opinions are based in large part on Plaintiff's subjective complaints, the ALJ's negative impression of Plaintiff's credibility also calls into question the weight of Dr. Gonzalez's opinions. For example, Dr. Gonzalez noted that Plaintiff "reports feeling sad and depressed, cries easily" (Tr. 249); "reports she still has episodes of anxiety almost daily" (Tr. 250); "reports at times she gets lost in her bed" (Tr. 250); "states she is eating excessively" (Tr.

251); "reports still feeling anxious and forgetful" (Tr. 251); and "reports she is forgetful...and feels easily distracted."   (Tr. 252).   However, for a treating physician's opinion to be entitled to controlling weight, that opinion must also be supported by objective medical findings, and not only subjective complaints.  See 20 C.F.R. § 416.927(d)(2) (treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory techniques").

The ALJ also properly identified inconsistencies between Dr. Gonzalez's treatment notes and her ultimate opinions.  See 20 C.F.R. § 416.927(d)(4).  For instance, the ALJ notes that Plaintiff scored a 28 out of 30 on a mini-mental state examination during her initial evaluation.  (Tr. 247). Further, Dr. Gonzalez rated the severity of Plaintiff's symptoms as moderate in an emotional impairment questionnaire completed on February 22, 2005 and, shortly thereafter on March 15, 2005, opined that her symptoms were moderately severe.  Compare (Tr. 253) with (Tr. 320).

In addition, the ALJ properly reviewed the treatment notes (Exs. 10F and 15F) and determined that they were "not generally supportive of anything more than moderate functional consequences of any mental impairment."  (Tr. 22).  The ALJ also properly reviewed the evidence as to Plaintiff's activities of daily living and did not find it to be supportive of Plaintiff's claimed level of impairment.

Finally, although this Court has absolutely no reason to question the credibility of Plaintiff's counsel or Dr. Gonzalez, it is true that Plaintiff's referral to Dr. Gonzalez came through her attorney and not any health care provider, and it is true that there is no medical evidence of depression or anxiety prior to that time.  The ALJ exercised his discretion to consider these circumstances in weighing Dr. Gonzalez's opinions, and this Court has no basis for finding error in that regard.  In addition, the ALJ also accurately noted that Plaintiff was a no-show for a DDS consultative

examination which deprived him of evidence. Plaintiff has offered no explanation for her failure to attend such examination, and, again, this Court cannot find fault in the ALJ's finding that this "does not add to the credibility of [Plaintiff's] claim." (Tr. 22).

Although Plaintiff may disagree with his conclusion, the bottom line is that the ALJ properly evaluated Dr. Gonzalez's opinions under the treating physician rule. The ALJ adequately explained the reasons for his conclusions as to the weight to be given to Dr. Gonzalez's opinions, and his reasons are supported by substantial evidence of record. Thus, they are entitled to deference, and Plaintiff has not established any legal error as to the ALJ's analysis of Dr. Gonzalez's opinions.

**B.     The ALJ's Failure to Discuss Dr. Parmentier's Consultative Report in his Decision is, at Worst, Harmless Error.**

Shortly before the ALJ hearing, Plaintiff was referred to Dr. Parmentier for a consultative psychiatric evaluation. See Ex. 13F. This evaluation was conducted on March 9, 2005. (Tr. 299). It is undisputed that the ALJ did not specifically discuss Dr. Parmentier's evaluation and opinions in his decision, and Plaintiff argues that this omission constitutes reversible error. For the reasons discussed below, this Court disagrees and concludes that such omission is, at worst, harmless error.

Although Dr. Parmentier's report is not specifically mentioned in the ALJ's decision, the report was discussed at the ALJ hearing. In particular, the ALJ confirmed that Dr. Parmentier's report was prepared at the request of Plaintiff's counsel, and he questioned Plaintiff's counsel as to the identity of the translator used by Dr. Parmentier. (Tr. 357-358). The ALJ indicated that the absence of an unbiased translator "bears on credibility" and the "evidentiary weight to be given." (Tr. 358-359). Plaintiff's counsel advised the ALJ that the translator was "probably one of the assistants in the office who speaks Spanish" and the ALJ responded by asking "[i]f it was not somebody from your office I would like you to let me know." (Tr. 358). There is no indication in

the record that Plaintiff's counsel answered the ALJ's question and thus it can be assumed that the translator was from the office of Plaintiff's counsel.

From this exchange, it is apparent that the ALJ decided to give reduced weight to Dr. Parmentier's opinion because of his expressed concerns about the source of the referral and the absence of a neutral translator. Further, from a review of Dr. Parmentier's report, it is apparent that he relied heavily upon a review of Dr. Gonzalez's records in rendering his diagnosis and opinions. Dr. Parmentier also interviewed Plaintiff through a translator and found her to be "a poor historian" and only "able to provide limited background information." (Tr. 300). Plaintiff "denied" any past psychiatric history to Dr. Parmentier (Tr. 301) and Dr. Parmentier did not report performing any mental status or cognitive testing of Plaintiff during his evaluation. Thus, Dr. Parmentier's opinion is based solely on his review of Dr. Gonzalez's treatment records and the "limited background information" he was able to obtain from Plaintiff through her translator.

Although it would have been preferable for the ALJ to discuss Dr. Parmentier's report in his decision, his failure to do so does not constitute reversible error in this particular case. The Court is readily able to infer the ALJ's rejection of Dr. Parmentier's report and the reasons therefor from the record. In particular, the ALJ expressed his concerns at the hearing regarding the source of referral to Dr. Parmentier and the independence of the translator. Also, as noted above, the ALJ found that Plaintiff was "not totally credible" and also adequately explained his reasons for giving reduced weight to Dr. Gonzalez's opinions. Since Dr. Parmentier's report was based on Dr. Gonzalez's records and the self-reports of Plaintiff, it necessarily follows that the ALJ would also find fault with Dr. Parmentier's evaluation and opinions. Accordingly, there is substantial evidence in the record as a whole to support the rejection of Dr. Parmentier's opinion of total disability, and

the ALJ's failure to specifically discuss Dr. Parmentier's evaluation in his decision was, at worst, harmless error.

### VI.    CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 6) be GRANTED and that Plaintiff's Motion to Reverse Without a Remand for a Re-hearing or, Alternatively, With a Remand for a Re-hearing of the Commissioner's Final Decision (Document No. 5) be DENIED. I further recommend that the District Court enter Final Judgment in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


   /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 14, 2007